**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN CARLOS RODRIGUEZ-FRANCISCO,** | : | **CIVIL ACTION NO. 1:20-CV-1076** |
| | : | |
| | : | **(Judge Conner)** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| **D.K. WHITE, Warden,** | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

*Pro se* petitioner Juan Carlos Rodriguez-Francisco is a prisoner at the low-security Federal Correctional Institution at Allenwood, Pennsylvania ("FCI Allenwood Low"). Rodriguez-Francisco contends that his continued confinement during the COVID-19 viral pandemic[1] violates his rights under the Eighth Amendment to the United States Constitution. His instant habeas petition seeks immediate release from custody pursuant to 28 U.S.C. § 2241. For the following reasons, we will deny Rodriguez-Francisco's petition.

## I.   Factual Background & Procedural History

Rodriguez-Francisco is currently serving a 180-month term of imprisonment imposed by the United States District Court for the Southern District of New York

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." WORLD HEALTH ORGANIZATION, NAMING THE CORONAVIRUS DISEASE (COVID-19) AND THE VIRUS THAT CAUSES IT, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

for drug-trafficking and firearms convictions.  See United States v. Rodriguez-Francisco, No. 7:13-CR-233, Doc. 38 (S.D.N.Y. Nov. 24, 2014).  He has already filed two motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) with the sentencing court.  See id., Docs. 86, 91.  Those motions have been denied.  Id., Docs. 87, 90.

Rodriguez-Francisco now seeks immediate release through a habeas petition under 28 U.S.C. § 2241.  (See generally Doc. 1).  He claims that he suffers from diabetes and sleep apnea and that FCI Allenwood Low has failed to take appropriate action to protect high-risk individuals like himself from the COVID-19 virus.  (Id. at 1-2).  As to the conditions of confinement, he alleges that "at least 18 inmates [are] within 3 feet of one another at all times" and that over "150 inmates share 5 toilets, approximately 12 showers, 4 telephones, and 6 computers," making social distancing "an impossibility."  (See id. at 2).  Rodriguez-Francisco also alleges that neither prisoners nor staff are tested for the virus.  (Id.)  He speculates that, with the purported lack of testing and the potential for carriers to be asymptomatic, "it is reasonable to presume that the virus is wide-spread" at his facility.  (Id.)

Following receipt of Rodriguez-Francisco's petition, we ordered expedited briefing.  Respondent promptly filed a brief in opposition, (Doc. 5), and Rodriguez-Francisco filed a reply, (Doc. 6).  Rodriguez-Francisco's Section 2241 petition is now ripe for review.

II.   **Legal Standard**

A federal district court may issue a writ of habeas corpus if a petitioner demonstrates that they are "in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2241(c)(3).  As the Third Circuit Court of

Appeals has explained, the "core" purpose of habeas corpus "has traditionally been

to inquire into the legality of detention, and the only judicial relief authorized was

the discharge of the prisoner or his admission to bail, and that only if his detention

were found to be unlawful."  Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002)

(citation and internal quotation marks omitted).  Thus, habeas has been found to

be the proper vehicle for challenges to "the fact or length of confinement," Tedford

v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993) (quoting Preiser v. Rodriguez, 411 U.S.

475, 494 (1973)), or the "execution" of that confinement, see Woodall v. Fed. Bureau

of Prisons, 432 F.3d 235, 241-42 (3d Cir. 2005) (quoting Coady v. Vaughn, 251 F.3d

480, 485 (3d Cir. 2001)) (citing United States v. Eakman, 378 F.3d 294, 297 (3d Cir.

2004)).  When a petitioner seeks immediate release from custody, the "sole federal

remedy" lies in habeas corpus.  See Preiser, 411 U.S. at 500.

**III.**  **Discussion**

Rodriguez-Francisco asks this court to order his immediate release from

custody based on his concern that he may contract the COVID-19 virus at FCI

Allenwood Low and suffer life-threatening complications.  He grounds his petition

in the Eighth Amendment's "cruel and unusual punishments" clause.  See U.S.

CONST. amend. VIII.  Respondent contends, *inter alia*, that Rodriguez-Francisco has

failed to exhaust administrative remedies and that his claim fails on the merits.[2]  We
address respondent's challenges in turn.

### A.  Exhaustion

We note as a threshold matter that respondent has abandoned the argument,
raised in previous cases, that conditions-of-confinement claims are not cognizable
in habeas.  (See generally Doc. 5).  We have thoroughly explored this jurisdictional
issue and held that, under Third Circuit precedent, a claim alleging conditions so
"extreme" as to "mark a fundamental shift in the nature of [one's] confinement" can
be raised in a habeas petition.  See Camacho Lopez v. Lowe, No. 3:20-CV-563, __ F.
Supp. 3d __, 2020 WL 1689874, at *5-6 (M.D. Pa. Apr. 7, 2020) (citing Woodall, 432
F.3d at 236, 241-44; Ali v. Gibson, 572 F.2d 971, 975 n.8 (3d Cir. 1978), superseded by
statute on other grounds as stated in Callwood v. Enos, 230 F.3d 627, 633 (3d Cir.
2000)).  This rationale has become the prevailing rule in this judicial district.[3]

---

[2] Respondent presents alternative arguments in the event that Rodriguez-
Francisco's filing is construed as a motion for compassionate release or an appeal
from a denial of a request for home confinement.  We need not discuss these issues
because Rodriguez-Francisco's filing is unequivocally a petition under 28 U.S.C.
§ 2241 and cannot be construed otherwise.

[3] See, e.g., Thakker v. Doll, No. 1:20-CV-480, __ F. Supp. 3d __, 2020 WL
2025384, at *2 (M.D. Pa. Apr. 27, 2020) (Jones, J.), appeal filed, No. 20-1906 (3d Cir.);
Bystron v. Hoover, No. 3:20-602, 2020 WL 1984123, at *3-4 (M.D. Pa. Apr. 27, 2020)
(Mannion, J.); Engelund v. Doll, No. 4:20-CV-604, 2020 WL 1974389, at *7 (M.D. Pa.
Apr. 24, 2020) (Brann, J.); Cuevas v. Pennsylvania, No. 1:19-CV-1733, 2020 WL
1911511, at *4 (M.D. Pa. Apr. 20, 2020) (Rambo, J.); Saillant v. Hoover, No. 1:20-CV-
609, 2020 WL 1891854, at *3 (M.D. Pa. Apr. 16, 2020) (Wilson, J.); see also Umarbaev
v. Lowe, No. 1:20-CV-413, 2020 WL 1814157, at *5 n.2 (M.D. Pa. Apr. 9, 2020) (Kane,
J.) (assuming without deciding that claim was cognizable in habeas).

Rodriguez-Francisco is detained at FCI Allenwood Low, where one staff member is currently positive for the COVID-19 virus and one staff member has recovered from the virus.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (follow "Full breakdown and additional details" hyperlink) (last updated July 23, 2020, 3:00 p.m.).  He alleges that staff are not acting to protect prisoners from exposure and that he is at an elevated risk for serious complications or death from contracting the virus.  Such conditions are sufficiently "extreme" to conclude that we have habeas jurisdiction over the instant petition. Cf. Verma v. Doll, No. 4:20-CV-14, 2020 WL 1814149, at *4 (M.D. Pa. Apr. 9, 2020).

Respondent first contends that Rodriguez-Francisco failed to exhaust administrative remedies prior to filing his Section 2241 petition.  Respondent posits that there is an administrative process for challenging conditions of confinement, a process that Rodriguez-Francisco completely ignored.  Therefore, respondent claims, the instant Section 2241 petition must be dismissed.  We disagree.

Were Rodriguez-Francisco seeking a remedy that could be provided by the Federal Bureau of Prisons ("BOP"), *e.g.*, a change to some allegedly improper condition of his imprisonment, respondent's assertion may have some force.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996); 28 C.F.R. §§ 542.10-.19 (providing administrative pathway for challenging "an issue relating to any aspect" of confinement).  But this is not the relief Rodriguez-Francisco seeks. He expressly requests immediate release from prison for alleged violation of his constitutional rights—a remedy the BOP cannot grant.  Accordingly, the judicially created exhaustion requirement for Section 2241 petitions is inapplicable in these

circumstances, as any such administrative request would be futile.  See Woodall,

432 F.3d at 239 n.2 (affirming excusal of lack of exhaustion for Section 2241 petition

because exhaustion would have been futile); Gambino v. Morris, 134 F.3d 156, 171

(3d Cir. 1998) (Roth, J., concurring); Hugel v. Bledsoe, No. 1:08-CV-1050, 2009 WL

1406252, at *3 (M.D. Pa. May 18, 2009) (Conner, J.).

## B.    Merits of Habeas Petition

We thus turn to the merits of Rodriguez-Francisco's Section 2241 petition.

The gravamen of his claim is that FCI Allenwood Low is not implementing

adequate measures to prevent the spread of the COVID-19 virus within the facility.

Specifically, he avers that being in close contact with numerous other inmates

without the possibility of social distancing places him at high risk of contracting the

COVID-19 virus and represents "an imminent threat of serious bodily injury or

death[.]"  (Doc. 1 at 2).  Rodriguez-Francisco alleges that these conditions violate

the Eighth Amendment's prohibition against cruel and unusual punishment.

The Eighth Amendment guarantees a prisoner's right to be free from "cruel

and unusual punishments" while in custody.  Ricks v. Shover, 891 F.3d 468, 473 (3d

Cir. 2018) (quoting Whitley v. Albers, 475 U.S. 312, 318 (1986) (quoting U.S. CONST.

amend. VIII)).  An Eighth Amendment claim challenging conditions of confinement

has two elements: (1) the deprivation asserted must be "sufficiently serious" to

violate the Constitution, and (2) the prison official or officials responsible for the

deprivation "must have a sufficiently culpable state of mind."  Thomas v. Tice, 948

F.3d 133, 138 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

The second element can be proven by establishing that prison officials "acted with

deliberate indifference to the inmate's health or safety or [to] conditions of confinement that violated the inmate's constitutional rights." Id. (citation omitted). Stated differently, prison officials must "both know of and disregard an excessive risk to inmate health or safety" or a violation of the inmate's constitutional rights. Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

Rodriguez-Francisco's claim fails on both prongs. We recognize that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing. Verma, 2020 WL 1814149, at *4; see also Engelund v. Doll, 4:20-CV-604, 2020 WL 1974389, at *9 (M.D. Pa. Apr. 4, 2020). But the inability to practice effective social distancing is not, in and of itself, sufficiently serious to implicate a violation of the Eighth Amendment. Cf. Engelund, 2020 WL 1974389, at *9.

The Centers for Disease Control and Prevention acknowledge that individuals will be detained during the pandemic and have issued preparation, prevention, and management guidance for detention facilities. See *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/ guidance-correctional-detention.html (last visited July 23, 2020). The BOP appears to be following that guidance and has implemented modified operations for its facilities as summarized by respondent:

The modified operations provide for limited inmate movement to maximize social distancing and to prevent congregate gatherings, operation of essential inmate work details with appropriate screening, . . . and screening of staff and inmates for elevated temperature and respiratory symptoms. All staff who do not pass the daily screening are not permitted entry into work.

Newly-sentenced inmates are processed through one of three quarantine sites (FCC Yazoo City, FCC Victorville and FTC Oklahoma City) or to a BOP detention center jail unit. The BOP will test all inmates upon arrival at a BOP detention center jail unit or quarantine facility or at one of the three quarantine sites. All inmates will be tested again before movement to their designated facility. Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. If a quarantined inmate displays symptoms[,] they are placed in isolation. Inmates set to transfer are tested for COVID-19 and quarantined prior to transfer. All inmates, regardless of status, are temperature screened and evaluated for overt respiratory symptoms. A contact investigation determines who the close contacts are that get quarantined. Staff and inmates are issued appropriate face covering and are required to wear the face covering when in public areas when social distancing cannot be achieved.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended. Social and legal visits were stopped as of March 13, 2020, and remain suspended until at least June 30, 2020, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout the disruption, BOP has increased telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened

> for infection in accordance with the screening protocols in
> place for prison staff, contractors and visitors.

(Doc. 5 at 6 & n.2 (citations omitted); Doc. 5-1 at 3 n.1).  Rodriguez-Francisco does

not dispute respondent's assurances that FCI Allenwood Low is complying with

these modified parameters of operation.

The BOP has also reduced its overall prison population by ramping up

exercise of its authority under 18 U.S.C. § 3624(c)(2)—recently expanded by the

Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136,

§ 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to

home confinement.  See COVID-19 Coronavirus, FED. BUREAU OF PRISONS,

https://www.bop.gov/coronavirus/.  The BOP reports that it has increased use of

home confinement significantly, releasing an additional 7,086 prisoners in the past

four months.  Id. (last updated July 23, 2020, 3:00 p.m.).

And, contrary to Rodriguez-Francisco's assertion, FCI Allenwood Low has

been testing for the COVID-19 virus.  To date, at least 63 inmates have been tested

for the virus, all with negative results.  See COVID-19 Coronavirus, FED. BUREAU OF

PRISONS, https://www.bop.gov/coronavirus/ (follow "Learn more about the data and

view individual facility stats" hyperlink) (last updated July 23, 2020).  Staff members

have also been tested, with one FCI Allenwood Low staff member testing positive

and one staff member fully recovered.  See COVID-19 Coronavirus, FED. BUREAU OF

PRISONS, https://www.bop.gov/coronavirus/ (follow "Full breakdown and additional

details" hyperlink) (last updated July 23, 2020, 3:00 p.m.).  Hence, even when

considering Rodriguez-Francisco's medical conditions of diabetes and sleep apnea,[4] he has not identified a sufficiently serious deprivation concerning his conditions of confinement that rises to the level of an Eighth Amendment violation.

Rodriguez-Francisco likewise fails to establish that prison officials are acting with deliberate indifference to his health or safety or his constitutional rights. To the contrary, the above-stated modified operations and other ameliorative efforts demonstrate the exact opposite. FCI Allenwood Low officials are well aware of the COVID-19 pandemic and have taken numerous steps to mitigate the risk of infection and spread in their facility. Rodriguez-Francisco has not identified, let alone proven, any official conduct that exhibits deliberate indifference to the health or safety of prisoners during this unprecedented worldwide pandemic. Because Rodriguez-Francisco has not satisfied either element of his claim, we conclude that he is not entitled to habeas relief.

---

[4] Respondent points out that Rodriguez-Francisco has failed to substantiate his medical conditions and that, prior to sentencing in the Southern District of New York, he informed probation that he no longer is prediabetic or suffers from sleep apnea due to changes in his diet and lifestyle. (See Doc. 5 at 15; Doc. 5-5 at 1). Rodriguez-Francisco counters that there is a dispute of fact requiring a hearing. (Doc. 6). No hearing is necessary because even assuming Rodriguez-Francisco is diabetic and suffers from sleep apnea, he still has not established an Eighth Amendment violation.

IV.     **<u>Conclusion</u>**

We will deny Rodriguez-Francisco's petition (Doc. 1) for writ of habeas corpus.  An appropriate order shall issue.


        /S/ Christopher C. Conner

        Christopher C. Conner
        United States District Judge
        Middle District of Pennsylvania

Dated:     July 24, 2020